UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,      : 15-cr-00081-CBA-5
                               :
    - versus -                 : U.S. Courthouse
                               : Brooklyn, New York
HENRY POVEDA,                  :
also known as "Calvo",         : January 14, 2016
            Defendant          :
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


<u>**For the Government**</u>:          **Robert L. Capers, Esq.**
                              United States Attorney

                    BY:   **Ameet B. Kabrawala, Esq.**
                          Assistant U.S. Attorney
                          271 Cadman Plaza East
                          Brooklyn, New York  11201




<u>**For the Defendant**</u>:          **Mia Eisner-Grynberg, Esq.**
                              Federal Defenders of NY
                              One Pierrepont Plaza
                              16th Floor
                              Brooklyn, NY 11201


<u>**Transcription Service**</u>:      <u>**Transcriptions Plus II, Inc.**</u>
                              61 Beatrice Avenue
                              West Islip, NY 11729
                              laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1          THE CLERK:  Criminal Cause for Pleading, docket

2   number 15-cr-81, United States  of America v. Henry

3   Poveda.

4          Counsel please state your appearances, starting

5   with the government.

6          MR. KABRAWALA:  Good afternoon, your Honor.

7          Ameet Kabrawala for the United States.

8          MS. EISNER-GRYNBERG:  Fedearl Defenders by Mia

9   Eisner-Grynberg for Henry Poveda, who is to my right.

10          Good afternoon.

11          THE COURT:  Good afternoon, counselors.  Good

12   afternoon, Mr. Poveda.

13          THE DEFENDANT:  Good afternoon, your Honor.

14          THE COURT:  Interpreter, could you please state

15   your name for the record?

16          THE INTERPRETER:  Federally certified Spanish

17   interpreter Mario Michelena.

18   (INTERPRETER SWORN)

19          THE COURT:  Ms. Eisner-Grynberg, I understand

20   that your client is prepared to indictment in this matter

21   pursuant to a written plea agreement.

22          MS. EISNER-GRYNBERG:  Yes, that's correct.

23          THE COURT:  Mr. Poveda, as you may know, your

24   case has been assigned to Chief Judge Carol Amon and

25   she's the district judge whether (sic) to accept your

Proceedings

1  guilty pleas in this case, and she will decide whether to

2  accept your guilty plea and if she does, she will be the

3  judge who will sentence you.

4          You have the absolute right to have

5  Judge Amon listen to your plea and if you choose to do

6  so, that will be without any prejudice to you.

7          Do you understand?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  I understand that Judge Amon has

10 referred your guilty plea to me and I have in my hand a

11 form entitled, "Consent To Proceed Before a United States

12 Magistrate Judge."

13         Have you had an opportunity to review this

14 consent form with the assistance of an interpreter?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  And have you discussed this consent

17 form with your attorney fully?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Is this your signature on the first

20 signature line in the middle of the page above the word

21 defendant?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Now this form says you consent to

24 having me hear your plea and you do so voluntarily, after

25 full consultation with counsel.

Proceedings

1           Is that correct?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  Now as mentioned at the beginning

4    of this proceeding, I understand that you wish to plead

5    guilty to the charge in the indictment and that's the

6    document that sets forth the criminal charge that has

7    been brought against you.

8           Since this court must be certain that you

9    understand the rights and the consequences of your plea,

10   I will ask you certain -- explain certain matters and ask

11   you questions.  If I say anything you don't understand,

12   please say so and I will reword.

13          Is that clear?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  First, I am going to ask you to

16   take an oath.

17   H E N R Y   P O V E D A ,

18        called as a witness, having been first duly sworn,

19        was examined and testified as follows:

20          THE CLERK:  Please state your name for the

21   record.

22          THE DEFENDANT:  Henry Poveda Sabogar (ph.).

23          THE CLERK:  Thank you.  Have a seat.

24          THE COURT:  Mr. Poveda, you have just taken an

25   oath to tell the truth.  Do you understand that if you

Proceedings

1  answer any of my questions falsely, your answers could

2  later be used against you in another criminal prosecution

3  for perjury or for making a false statement?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  How old are you?

6          THE DEFENDANT:  49 years old.

7          THE COURT:  What schooling or education have

8  you had?

9          THE DEFENDANT:  College Education, Systems

10 Engineering.

11          THE COURT: Have you had any difficulty with

12 your lawyer either directly or through an interpreter?

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  Ms. Grynberg, have you had any

15 problems communicating with your client?

16          MS. EISNER-GRYNBERG:  No, none.

17          THE COURT:  Mr. Poveda, are you presently or

18 have you recently been under the care of a doctor or a

19 psychiatrist?

20          THE DEFENDANT:  No, your Honor.

21          THE COURT:  Have you ever been hospitalized or

22 treated for any mental illness or for addiction to drugs,

23 alcohol, or any other substance?

24          THE DEFENDANT:  No, your Honor, never.

25          THE COURT:  In the past 24 hours, have you

Proceedings

1  taken any drugs, pills or medicine of any kind?

2          THE DEFENDANT:  No, your Honor.

3          THE COURT:  Have you drunk any alcoholic

4  beverages?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  Is your mind clear today?

7          THE DEFENDANT:  Completely, your Honor.  Yes,

8  your Honor.

9          THE COURT:  And do you understand the nature of

10  these proceedings?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  And I note for the record, that Mr.

13  Poveda has been quite alert and very responsive to my

14  questions.

15          Ms. Grynberg, have you discussed the question

16  of a guilty plea with your client?

17          MS. EISNER-GRYNBERG:  Yes, I have.

18          THE COURT:  In your view, does he understand

19  the rights he would be waiving by pleading guilty?

20          MS. EISNER-GRYNBERG:  Yes, he does.

21          THE COURT:  Is he capable of understanding the

22  nature of these proceedings?

23          MS. EISNER-GRYNBERG:  Yes, he is.

24          THE COURT:  Do you have any doubts as to his

25  competency to proceed today?

Proceedings

1          MS. EISNER-GRYNBERG:  I have no doubts.

2          THE COURT:  Have you advised him of the

3    penalties that can be imposed and discussed the

4    applicable sentencing considerations, including the

5    sentencing guidelines?

6          MS. EISNER-GRYNBERG:  Yes, I have.

7          THE COURT:  Mr. Poveda, have you had a full

8    opportunity to discuss your case with your attorney?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Are you satisfied with your

11   attorney and the assistance she's given you thus far in

12   this matter?

13         THE DEFENDANT:  Very satisfied, your Honor.

14         THE COURT:  I am holding in my hand a copy of

15   the indictment.  As I've said, this is the document that

16   sets forth the criminal charge that has been brought

17   against you and various other individuals, and thus far,

18   there are two other individuals disclosed in the

19   indictment of this matter.  The indictment bears the

20   docket number 15-cr-81.

21         This indictment contains introductory

22   paragraphs discussing money laundering operations used by

23   drug trafficking organizations and specifically, it

24   discusses the black market peso exchange and it discusses

25   means in which a black market peso exchange broker will

1   offer to importers in South America, an opportunity to

2   pay a debt owed to a foreign exporter at a significant

3   discount.

4          And through the various means further described

5   in the prefatory paragraphs, the indictment discusses how

6   a black market peso exchange broker can assist in the

7   laundering of proceeds -- narcotics proceeds.

8          Have you discussed those allegations in the

9   introduction of the indictment with your attorney?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And specifically, the indictment

12   describes what is an operation called "The Guangzhou

13   Enterprise," that is alleged to have laundered billions

14   of United States dollars derived from narcotics

15   trafficking and it described that The Guangzhou

16   Enterprise typically arranges to pay Colombia pesos to

17   drug traffickers in exchange for the U.S. dollars of the

18   drug traffickers.

19          And it further describes the measures taken by

20   The Guangzhou Enterprise to help purchase and ship goods

21   from China to Colombia and elsewhere.  And in paragraph

22   11 of the prefatory introductory paragraphs, it states

23   that you and two other named individuals, as well as

24   various other individuals whose names are not disclosed,

25   were the leaders of The Guangzhou Enterprise.

Proceedings

1          Now the indictment sets forth one count which

2   is a -- and that charge is a conspiracy to launder money

3   and the conspiracy to alleged to have operated between

4   January 1st, 2004 and December 31st, 2014 and the

5   conspiracy is a money laundering conspiracy and it

6   describes three types of activities undertaken to launder

7   money.  And one activity -- the first activity described

8   is to conduct one or more financial transactions, which

9   affect interstate commerce and the transactions are

10  alleged to involve the proceeds of narcotics trafficking.

11         And with respect to this activity, it's alleged

12  that the named defendants, including you, knew that the

13  property involved with the transactions represented the

14  proceeds of unlawful activity and that you engaged in

15  this money laundering conspiracy with the intent to

16  promote the carrying on of the unspecified unlawful

17  activity and you know that the transactions were designed

18  to disguise the nature, location, the source, ownership

19  and control of the proceeds of the unlawful activity,

20  contrary to the United States Code.

21         Do you understand that charge?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And the second type of money

24  laundering activity that's alleged and again, that

25  activity was alleged to be conducted with the intent to

Proceedings

1  promote the unlawful activity with the knowledge that the

2  activity represented proceeds of unlawful activity and

3  were designed to disguise this -- transactions involved,

4  the sources.

5        Now the second activity that was part of this

6  money laundering conspiracy was -- involved the

7  transport, transmission, and transfer of monetary

8  instruments and funds from the United States to one or

9  more places outside the United States and specifically,

10  Hong Kong and China.

11       And as I said, this was done with the intent to

12  carry on the narcotics trafficking conspiracy and that it

13  was done with the knowledge that the monetary instruments

14  and funds represented proceeds of the unlawful activity

15  and the transactions involved were designed to avoid

16  transaction reporting requirements under federal law.

17       Do you understand that charge regarding the

18  transportation and transmission of monetary instruments

19  of funds?

20       THE DEFENDANT:  Yes, your Honor.

21       THE COURT:  And the third type of unlawful

22  money laundering activity is alleged to consist of one or

23  more financial transactions involving the transfer and

24  delivery of United States currency which involved

25  property representing the proceeds of unlawful activity.

Proceedings

1  And specifically again, narcotics trafficking and you're

2  alleged to have done so with the intent to promote the

3  carrying on of the activity and knew that the

4  transactions were designed to conceal and disguise the

5  location, source, ownership and control of the proceeds

6  involved.

7          Do you understand that conduct?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And as I said, the charge involves

10 a conspiracy and I just want you to know that a

11 conspiracy is an agreement to commit an unlawful act.

12 The three activities in which proceeds of narcotics

13 trafficking are alleged to have been laundered were the

14 object of the conspiracy and you're alleged to have

15 knowingly entered into this conspiracy with various other

16 individuals.

17          So do you understand the total conspiracy

18 charge against you involving the different types of money

19 laundering?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Then I will describe to you your

22 right to a trial and what rights you would be waiving by

23 pleading guilty to the charge in the indictment.

24          The first and most important thing you must

25 understand is that you have a right to plead not guilty

Proceedings

1    to the charge and to persist in your plea.

2              Under the Constitution and laws of the United

3    States, you would then have a right to a speedy and

4    public trial before a jury with the assistance of your

5    attorney and if you cannot afford an attorney, the Court

6    will appoint one for you, as has happened in this case.

7              Under our laws, you are presumed to be innocent

8    and would not have to prove that you were innocent.  At

9    trial, the burden would be on the government to prove

10   beyond a reasonable doubt that you are guilty of the

11   crime charged.

12             In order to prove you guilty of the crime

13   charged, the government would have to prove beyond a

14   reasonable doubt, each and every element of the charge.

15   So, the government would have to prove that you entered

16   into a conspiracy, that you did so on the dates alleged,

17   you did so knowingly, and that the conspiracy involved

18   the three types of activities that I described earlier.

19   And each part of that charge has to be proven beyond a

20   reasonable doubt.  If the government fails to present

21   sufficient evidence, the jury would have the duty to find

22   you not guilty.

23             Do you understand?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  In the course of a trial, witnesses

1  for the government would have to come to court and

2  testify in your presence.  Your lawyer would have the

3  right to cross-examine these witnesses and to object to

4  other evidence offered by the government.  You also have

5  the right to offer testimony and other evidence in your

6  behalf and to compel the attendance of witnesses.

7           Do you understand?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Although you have the right to

10  testify at a trial, you cannot be compelled to testify

11  and incriminate yourself.  If you decided not to testify,

12  the Court would instruct the jury they could not hold

13  that against you.

14           Do you understand?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  If you plead guilty, I will ask you

17  questions about what you did in order to satisfy myself

18  that you are guilty of the charge to which you seek to

19  plead guilty.  And you'll have to answer my questions and

20  acknowledge your guilt.

21           Thus, you'll be giving up the right that I've

22  just described; that is, the right not to say anything

23  that would show you're guilty of the crime with which

24  you're charged.

25           Do you understand?

Proceedings

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  If you plead guilty and the Court

3   accepts your guilty plea, you'll be giving up your right

4   to a trial and all the other rights I've just discussed.

5   There will be no trial and the Court will simply enter a

6   judgment of guilty based on your plea.

7          Do you understand?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Are you willing to give up your

10  right to a trial and the other rights I've discussed with

11  you?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  I understand that you've entered

14  into a written agreement with respect to your guilty

15  plea.  And I have a plea agreement, an eleven-page plea

16  agreement that has been marked Court Exhibit 1.  I would

17  like you to take a look at Court Exhibit 1.

18         Have you had the opportunity to read this plea

19  agreement in its entirety with the assistance of an

20  interpreter?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Is that your signature on page 11

23  of the agreement?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Did you discuss this agreement

Proceedings

1  fully with Ms. Grynberg, your attorney?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  This agreement provides that you

4  will plead guilty to the one count indictment of this

5  matter.  It sets forth various sentencing considerations,

6  as well as other terms with respect to your plea and the

7  charge.

8          Do you understand each and every provision of

9  this written agreement?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Does the plea agreement as written,

12  fully and accurately reflect your understanding of the

13  agreement that you've entered into with the government?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Other than the promises contained

16  in this written agreement, has anyone made any other

17  promises that have caused you to plead guilty?

18          THE DEFENDANT:  No, your Honor.

19          THE COURT:  Has anyone made any promises as to

20  what your sentence will be?

21          THE DEFENDANT:  No, not at all.

22          THE COURT:  Then I would like you to discuss

23  the -- discuss with you the consequences of pleading

24  guilty.  The statute you're accused of violating in the

25  indictment provides for a term of imprisonment from zero

Proceedings

1   to twenty years.

2           In determining what sentence to impose within

3   the statutory range, Judge Amon will consider the

4   guidelines issued by the United States Sentencing

5   Commission and the other factors specified by Section

6   3553(a) of the United States Criminal Code in determining

7   whether to impose a sentence within the guideline range.

8           The other factors she will consider include the

9   nature and circumstances of the crime committed, your

10  characteristics and criminal history and the public

11  interest in your sentence.

12          Prior to sentencing, the Court will receive a

13  presentence report containing information about these

14  factors and the guidelines.  You and your lawyer will

15  have the opportunity to see that report and to speak on

16  your behalf at sentencing.

17          Do you understand?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Have you and your attorney talked

20  about how the sentencing guidelines might apply in this

21  case?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Now under the plea agreement, you

24  have agreed that your guidelines sentence should be

25  calculated based on laundered funds -- based on the value

Proceedings

1 of laundered funds equal to $8 million.

2          And you have stipulated that you knew or

3 believed that the laundered funds were the proceeds of or

4 were intended to promote an offense involving the

5 manufacture, importation, or distribution of a controlled

6 substance.

7          And you have also stipulated that you agreed

8 that you were in the business of laundering funds.  And

9 by making these agreements in the plea agreement you

10 signed, these stipulations will be important

11 considerations in the calculation of your guidelines

12 range.

13          Do you understand that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  And you have specifically waived

16 your right to a jury trial or Fatico hearing on any of

17 these issues.

18          Now as the plea agreement makes clear, the

19 sentencing guidelines are advisory.  However, Judge Amon

20 will consider the guidelines.  So, I am going to ask the

21 attorneys here to give me their best estimate of the

22 likely guideline range.

23          MR. KABRAWALA:  Your Honor, the government

24 presently estimates that the defendant's advisory

25 guidelines range would effectively be 240 months which is

Proceedings

1   the statutory maximum penalty authorized under Title 18

2   USC 1956.  And so, that is the government's estimate at

3   this time.

4           MS. EISNER-GRYNBERG:  I agree with the

5   calculation.

6           THE COURT:  Now keep in mind that they are

7   estimates and sometimes even though the attorneys agree

8   at a plea, the actual guidelines range calculation by the

9   Court may be different since the estimates -- the basis

10  for the estimates might change if new facts are obtained

11  or they could simply be wrong.

12          Until a presentence report is prepared and the

13  Court hears from you, your lawyer and the government

14  attorney at sentencing, we will not know with certainty

15  what the guidelines will be nor will we know whether

16  there will be grounds for the Court to depart from them

17  or whether the Court will impose a non-guideline

18  sentence.

19          Do you understand?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  The only thing that's clear is any

22  sentence that's imposed on you will be subject to the

23  statutory maximum of twenty years.

24          Now in addition -- I want you to understand

25  that at sentencing, any recommendation made by you or

Proceedings

1  your attorney, even if it's not opposed by the government

2  is simply a recommendation and could be rejected by the

3  Court.

4          Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  So if your sentence is higher than

7  recommended or expected by you, you will not be able to

8  withdraw your guilty plea.

9          Is that clear?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  In addition to imprisonment, you

12  will be sentenced to supervised release.  Supervised

13  release means that after you're released from prison

14  there may be many restrictions placed on your liberty

15  such as travel limitations, reporting requirements to a

16  probation officer, prohibitions on carrying guns and the

17  like.  And if you are removed from the United States as

18  is further discussed in your plea agreement, a condition

19  of supervised release could be that you not reenter the

20  United States.

21          Do you understand the nature of supervised

22  release?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  The applicable statutes provide

25  that you could be subject to a supervised release term of

Proceedings

1  up to five years.

2        What's important to keep in mind is that if you

3  violate the conditions of supervised release, you could

4  be returned to prison for up to three years even if the

5  violation occurs close to the end of the supervised

6  period.  That means that if you don't follow the

7  conditions of supervised release, your prison term could

8  be substantially lengthened.

9        Do you understand?

10        THE DEFENDANT:  Yes, your Honor.

11        THE COURT: You could also be subject to a

12  monetary fine of up to $500,000 or twice the value of the

13  property involved in the money laundering transactions.

14        Do you have an estimate on that amount?

15        MR. KABRAWALA:  At this time, Judge, the

16  government would estimate conservatively, that a fine

17  under that scheme would be twice the amount of the

18  stipulated --

19        THE COURT:  Forfeiture?

20        MR. KABRAWALA:  -- forfeiture amount which

21  would be $16 million.

22        THE COURT:  Okay.

23        Now we'll then discuss that forfeiture is a

24  consequences of pleading guilty and as set forth in

25  paragraphs 6 through 13 of your plea agreement, you have

1   agreed to entry of a forfeiture money judgment of $8

2   million.  And in the agreement, you have agreed to make

3   payment by sentencing and if you don't pay that amount,

4   interest could accrue on that amount.  That amount is an

5   amount that will be imposed upon you jointly and

6   severally together with any monetary judgments imposed

7   against any other co-conspirator.

8               Do you understand that?

9               THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  And you've made other promises with

11  respect to the forfeiture money judgment including your

12  waiving your right to requisite notice and assisting in

13  the collection of the forfeiture money judgment.

14              Now in addition to the forfeiture money

15  judgment, you will have to pay a $100 special assessment.

16              Now as I mentioned earlier, you will be subject

17  to removal as discussed more fully in paragraph 19 of

18  your agreement and you have acknowledged in that

19  paragraph that there will be serious immigration

20  consequences as a result of a conviction for the charge

21  in the indictment if you're not a citizen of the United

22  States.

23              And you have agreed that you have acknowledged

24  that by pleading guilty to the charge in the indictment,

25  you will be subject to removal because it is

Proceedings

1  presumptively mandatory.

2           Do you understand that?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  And I want you to understand that

5  if you're removed from the United States, you will be

6  denied any efforts to apply for citizenship or

7  readmission to the United States in the future.

8           If after you're sentenced, you or your attorney

9  think that the Court has not followed the law in

10 sentencing you, you ordinarily have the right to appeal

11 your sentence to a higher court.  However, under the plea

12 agreement you signed, you have substantially limited your

13 right of appeal and agreed not to file any appeal or

14 otherwise challenge your conviction if the Court

15 sentences you to a term of imprisonment of 240 months or

16 less.

17          Do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you have any questions you would

20 like to ask me about the charge, your rights or anything

21 else relating to this matter?

22          THE DEFENDANT:  No, your Honor.

23          THE COURT:  Is everything clear to you?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Ms. Grynberg, do you know of any

Proceedings

1  reason why your client should not enter a plea of guilty

2  to the charge?

3        MS. EISNER-GRYNBERG:  No.

4        THE COURT:  Are you aware of any viable legal

5  defense?

6        MS. EISNER-GRYNBERG:  No.

7        THE COURT:  Mr. Poveda, are you ready to plead?

8        THE DEFENDANT:  Yes, your Honor.

9        THE COURT:  How do you plead to the charge

10  contained in the indictment, guilty or not guilty?

11        THE DEFENDANT:  Guilty, your Honor.

12        THE COURT:  Are you making your plea of guilty

13  voluntarily and of your own free will?

14        THE DEFENDANT:  Voluntarily, your Honor.

15        THE COURT:  Has anyone threatened or forced you

16  to plead guilty?

17        THE DEFENDANT:  No, your Honor.

18        THE COURT:  Other than the written agreement

19  marked Court Exhibit 1 that we discussed earlier, has

20  anyone made you any promise that caused you to plead

21  guilty?

22        THE DEFENDANT:  No, your Honor.

23        THE COURT:  Has anyone made you any promise

24  about the sentence you will receive?

25        THE DEFENDANT:  Not at all, your Honor.

Proceedings

1          THE COURT:  Then I would like you to describe

2    briefly what you did in connection with the crime charged

3    in the indictment.

4          THE DEFENDANT:  Good afternoon, your Honor.

5          I am guilty of cooperating in this money

6    laundering for this money that was received from drug

7    trafficking.  I knew that it was money that was coming

8    from drug trafficking.  And I helped out, to carry these

9    instructions from the moment I received the money until

10   my boss got paid.

11         THE COURT:  And as a result, what did you do in

12   connection to your laundering the money?  Did you engage

13   in certain in certain financial transactions?

14         THE DEFENDANT:  I helped providing certain bank

15   accounts in order to launder the money and help also

16   given the proceeds in cash to the clients and then the

17   clients would send some merchandise down to Colombia.

18         THE COURT:  And you said you provided bank

19   accounts for the deposit of the proceeds of narcotics

20   activity?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And you also said that you provided

23   cash that would be transported.

24         THE DEFENDANT:  Excuse me?

25         THE COURT:  Did you provide cash or currency?

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  In connection with -- that

3    represented proceeds of narcotics trafficking?

4          THE DEFENDANT:  That's right, your Honor.

5          THE COURT:  And then what happened to those

6    proceeds?

7          THE DEFENDANT:  I would receive it.  I would

8    sell it to the people who were traveling to China and

9    then pay for it in Colombia.

10         THE COURT:  And when did these activities take

11   place?

12         THE DEFENDANT:  2003, the last three years.

13         MR. KABRAWALA:  Could the Court clarify?

14         THE COURT:  Did these money laundering

15   activities occur between January 1st, 2004 and December

16   31st, 2014?

17         THE DEFENDANT:  That's right, your Honor.

18         THE COURT:  And did you know that the

19   transactions that you've described were designed in whole

20   or in part to conceal and disguise the nature of the

21   proceeds or -- that is to disguise the fact that the

22   proceeds -- the cash involved were proceeds of narcotics

23   trafficking activity?

24         THE DEFENDANT:  Yes, your Honor, I was aware of

25   that.

Proceedings

1          THE COURT:  And you had mentioned you engaged

2    in these transactions with somebody else?

3          THE DEFENDANT:  Yes, your Honor.  I

4    participated because my duty was to give the money to the

5    owner of this money in Colombia.  I was responsible for

6    that.

7          THE COURT:  Okay.  And I will ask Mr. Kabrawala

8    to explain the connection to this district.

9          MR. KABRAWALA:  Sure.  First off, Judge, we

10   believe that the Court has satisfied all the elements of

11   the offense of money laundering conspiracy.  The

12   government would prove at trial that the defendant

13   permitted or actually gave access to one of his many bank

14   accounts in Hong Kong and that among other transactions,

15   there was one in particular that was represented to be

16   drug proceeds and those drug proceeds actually were

17   deposited into a bank account in Brooklyn.

18          I should say that the monies represented to be

19   drug proceeds were deposited into a bank account in

20   Brooklyn and that -- those drug proceeds were wire

21   transferred from that bank account in Brooklyn to a bank

22   account that Mr. Poveda had given to co-conspirators to

23   conceal or disguise drug proceeds.

24          THE COURT:  Did you understand what Mr.

25   Kabrawala described?

Proceedings

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Is that correct?

3          THE DEFENDANT:  Your Honor, I was aware that

4    the money was illegal money and that it came from drugs

5    but in terms of where exactly from, I wasn't sure.

6          THE COURT:  Okay.

7          MR. KABRAWALA:  That's satisfactory.

8          THE COURT:  That's fine.  Okay.

9          MR. KABRAWALA:  And I will take it the defense

10   does not object -- does not contest the government's

11   proffer, what it would be able to prove as to venue,

12   which of course is not an element of the mens rea.

13         MS. EISNER-GRYNBERG:  No objection.

14         THE COURT:  Do you understand what was just

15   said?

16         THE DEFENDANT:  Yes, that's right, your Honor.

17         THE COURT:  Okay.  Then based on the

18   information given to me, I find that Mr. Poveda is acting

19   voluntarily, that he fully understands the charge, his

20   rights and the consequences of his plea and that there is

21   a factual basis for his plea.

22         I, therefore, recommend to Judge Amon to accept

23   Mr. Poveda's plea of guilty to the charge in the

24   indictment.

25         Has there been a sentencing date set?

Proceedings

1          THE CLERK:  Chief Judge Amon sets May 5th at 10

2     o'clock for sentencing.  She also sets the following

3     deadline:  The presentence investigation report is to be

4     disclosed by April 7th, 2016.  Defendant's sentencing

5     submission will be due April 21st, 2016.  The

6     government's response will be due April 28th, 2016.

7          THE COURT:  Okay.

8          MR. KABRAWALA:  Thank you, Judge.

9          MS. EISNER-GRYNBERG:  Thank you.

10         THE DEFENDANT:  Thank you, your Honor.

11         THE COURT:  Thank you.

12              (Matter concluded)

13                  -oOo-

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **19th** day of **April**, 2016.

*Linda Ferrara*

Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.